UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

NAAMAN ABDULLAH, an
Individual; HZAK, LLC, a
Florida Limited Liability
Company; KEVMAR
HOLDINGS, LP, a Nevada
Limited Partnership

       Plaintiffs,

v.

GOLD HILL MINERALS, INC.,
a Nevada Corporation
and DAVID BADNER, an
Individual

       Defendant.

## **COMPLAINT**

Plaintiffs, NAAMAN ABDULLAH, an Individual, HZAK, LLC, a Florida Limited Liability Company, and KEVMAR HOLDINGS, LP, a Nevada Limited Partnership (hereinafter "Plaintiffs"), sue Defendants, GOLD HILL MINERALS, INC., a Nevada Corporation and DAVID BADNER, an Individual (hereinafter "Defendant"), and as grounds allege:

### I.    **PARTIES, JURISDICTION AND VENUE**

1.    Plaintiff, NAAMAN ABDULLAH, is an individual over eighteen years of age, residing and domiciled in Miami-Dade County, Florida, and is otherwise sui juris.

2.    Plaintiff, HZAK, LLC, is a Limited Liability Company organized under the laws of the

State of Florida, and maintains its principal office at Miami-Dade County, Florida.

3.      Plaintiff, KEVMAR HOLDINGS, LP, is a Limited Partnership, organized and formed under the laws of the State of Nevada with a principal place of business in Davie, Florida, and is otherwise sui juris.

4.      At all times material, Defendant, GOLD HILL MINERALS, INC. (hereinafter "GHMI"), was and is a Nevada Corporation, which has solicited the sale and has sold securities in Miami-Dade County, Florida to residents of Miami-Dade and Broward County, Florida.

5.      At all times material, Defendant, DAVID BADNER, acting in his Individual capacity and as a Principal of Defendant, GHMI, solicited the sale and procured the purchase of securities to residents of Miami-Dade and Broward County, Florida.

6.      This is an action for damages, a declaration of rights, injunctive relief, attorneys' fees, litigation expenses, and costs pursuant to the Securities Act of 1933 at §§ 5(a), 5(b),10, 11, 12(a)(1), 12(a)(2), 17(a)(1), 17(a)(2), 17(a)(3), 22, 27, 15 U.S.C. §§ 77(b), 77(v) 78(j); the Securities Act of 1934 at §§10(b)-5b; and the Florida Securities Investor Protection Act §§ 517.011, 517.021, 517.301, 517.07, 517.081, 517.1215, 517.211 and 517.241.

7.      The Court has original jurisdiction over Plaintiffs' claims arising under Securities Act of 1933 at §§ 22 and 27 and pursuant to 28 U.S.C. § 1331 and ancillary jurisdiction over the violation of the Florida Securities Investor Protection Act pursuant to 28 U.S.C. § 1367.

8.      The Court has jurisdiction over this matter pursuant to Securities Act of 1933 at § 22, 28 U.S.C. §§ 2201 and 2202, and may render declaratory judgment on the existence or nonexistence of any right.

9.      Venue is properly located in the Southern District of Florida because Defendants' solicited,

14.     On or about April 5th, 2012 (and subsequent purchases thereafter), the Plaintiffs listed herein, as individuals or through a wholly owned entity, gave in and purchased the unregistered securities from BADNER and GOLD HILL MINERALS, INC. for a cumulative purchase price of $200,000.00 USD (The following amounts were paid by each Plaintiff: Plaintiff NAAMAN ABDULLAH paid $100,000.00; Plaintiff HZAK, LLC, paid $50,000.00; and Plaintiff KEVMAR HOLDINGS, LP paid $50,000.00).

15.     The Plaintiffs were never provided with any financial statements reflecting actual company assets and ongoing or planned operations of GOLD HILL MINERALS, INC., at or prior to their "purchase" of these unregistered securities and to this day have yet to receive these documents or any financials (as promised by BADNER). In fact, the documents that were given to them by BADNER at the time of purchase constitute further misrepresentations, as the documents have conflicting information (both to other documents and as to promises made by BADNER when inducing the Plaintiffs to purchase these securities). Despite numerous requests from the Plaintiffs, the Defendants have never provided any Plaintiff with any documentation indicating where their investment monies were deposited or how they were applied.

16.     Moreover, many of the documents actually provided by BADNER contained many material misrepresentations and often contradicted each other materially.

17.     Defendant BADNER promised that GHMI would pay the Plaintiffs dividends on their shares by August 30th, 2014.   The Plaintiffs received no dividends in any amount on or before August 30th, 2014, as promised by BADNER.

18.     After being questioned by the Plaintiffs about the promised returns and dividends on their investments, BADNER then promised that dividends would be paid prior to the year's end in 2014.   BADNER made his promise in bad faith, in order to buy some time to secure other investors' money and use that money to pay back the Plaintiffs in what appears to be a classic Ponzi Scheme. Neither he nor Defendant, GHMI kept this

promise to pay these dividends.

19.    On or about November, 2014, almost three (3) years after the initial purchase of these unregistered securities from BADNER, the Plaintiffs, again, started questioning BADNER about their investment and demanded, *inter alia*, that BADNER furnish financial statements of GHMI, so that they could assess and verify how their investment was actually used.

20.    As recent as December 15th, 2014, Defendant BADNER reiterated his promise that GHMI would pay the Plaintiffs either dividends or buy back their shares by the end of 2014.

21.    After stringing the Plaintiffs along for months, Defendant BADNER, when questioned on the nonpayment of the promised dividends, changed his tune and now responded that GHMI was under no obligation to pay dividends.

22.    On or about January 10th, 2015, Defendant BADNER now promised the Plaintiffs that a new distribution schedule would be published to the Plaintiffs, as shareholders, and that he would volunteer to either purchase the Plaintiffs' shares back personally or have Defendant GHMI purchase their shares back, if the Plaintiffs "did not like the terms and conditions or the date is not met for completion."

23.    Defendant BADNER did not keep his promise to provide a new distribution schedule by the end of January 2015 and the Plaintiffs, as a result, demanded their investment money back again.

24.    Defendant BADNER then agreed to return the full amounts of each of the Plaintiffs' moneys in exchange for the shares they allegedly purchased in GHMI.

25.    When questioned repeatedly throughout February, 2015 about when the Plaintiffs would receive the return of their investment money, Defendant BADNER made misrepresentations about having sent wires, about holds on the money he was to pay them, about not having access temporarily to money from new investors in GHMI that

he planned to use to pay the Plaintiffs (again in what appears to be a classic Ponzi Scheme) and even at one time blamed the weather for delays in his promised refund of the Plaintiffs' money.

26. GHMI has never paid any dividends to any of the Plaintiff, nor has GHMI or BADNER returned the Plaintiff their capital investments, prior to or as of the time of the filing of this Action.

27. Furthermore, no documentation has ever been provided to the Plaintiffs, with respect to their investment(s), gold mining activities being performed, or the financial position of GHMI, since the date of the Plaintiffs' "purchase" of the unregistered securities, despite the Defendants' legally required duty to provide this information and many requests from the Plaintiffs. Defendants have deliberately kept the Plaintiffs, who are unsophisticated investors, in the dark about the GHMI enterprise and their investment.

28. When BADNER and GHMI failed to pay the dividends as promised, the doctor investors, on numerous occasions have demanded a return of their investment(s). In response to the doctors' demand for return of their investment(s), BADNER has responded with a slew of different text messages and emails ranging from the "wire transfer is in process" to "I am waiting for a new investor to purchase your shares, in order to return your money," a clear indication of what amounts to be a classic Ponzi scheme (a copy of some of the text messages and/or emails from BADNER to Plaintiff are attached hereto as Composite Exhibit "A"). To date, the Plaintiffs have yet to receive a return of their initial investment(s), nor any interest or dividends as promised by BADNER.

29. Through their conduct, BADNER and GHMI, are each in violation of the anti-fraud and registration provisions of the federal securities laws, and the anti-fraud and registration provisions of the State of Florida securities laws. Based on the nature of their violations and the scienter the Defendants have demonstrated throughout their willful and wanton

disregard for the federal and State of Florida securities laws, the Plaintiffs are entitled to an award of the civil remedies being requested in this complaint and any other relief this Honorable Court deems just and proper.

30.     All conditions precedent to the maintenance this Action have occurred, have been performed by Plaintiffs, or have been waived by the actions or inactions of the Defendants.

## III. SALE OF UNREGISTERED SECURITIES IN VIOLATION OF §§ 5(A) AND 5(C) OF THE SECURITIES ACT OF 1933

31.     Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP, restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the Complaint, as though fully set forth herein.

32.     No registration was filed or in effect with the Securities Exchange Commission (the "SEC") pursuant to the Securities Act of 1933 and no exemption from registration exists with respect to the securities and transactions described in this Complaint.

33.     Defendants BADNER and GHMI, since on or about April 5th, 2012 through present, directly or indirectly have: (a) made use of or of the means of transportation in interstate commerce or of the mails or instruments of transportation or communication in interstate commerce or of the mails to securities; (b) carried securities or caused such securities to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose or delivery after sale; and (c) made use the means of transportation in interstate commerce or of the mails to offer to sell or offer to buy securities, without a registration statement having been filed or of being in effect with the SEC as to such securities.

34.     By reason of the foregoing, Defendants BADNER and GHMI have directly or indirectly violated §§ 5(a) and 5(c) of the Securities Act of 1933 and have damaged the Plaintiffs

directly and proximately as a result of these violations.

WHEREFORE, Plaintiffs are entitled to recover and demand payment of any and all damages suffered as a result, to include the rescission of the unregistered securities sold to Plaintiff and a return of their capital investment(s), any and all resulting monetary damages, attorneys' fees and costs and any other relief deemed just and proper by this Court.

## IV. FRAUD IN VIOLATION OF 10(B) AND RULE 10B-5(B) OF THE SECURITIES EXCHANGE ACT OF 1934

35.   Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP, restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the Complaint, as though fully set forth herein.

36.   Defendants BADNER and GHMI, since on or about April 5th, 2012 through present, directly or indirectly by use of the means and instrumentalities of interstate commerce, and of the mails in connections with purchase or sale of securities, knowingly, willingly or recklessly have: (a); employed devises, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and courses of business which have operated, are now operating and will operate as a fraud upon the purchasers of such securities.

37.   By reason of the foregoing, Defendants BADNER and GHMI have directly or indirectly violated §§ 10(b) of the Securities Act of 1934 and Exchange Act Rule 10B-5(b) [15 U.S.C. § 240.10b-5] and have damaged the Plaintiffs directly and proximately as a result of these violations.

WHEREFORE, Plaintiffs are entitled to recover and demand payment of any and all damages suffered as a result, to include rescission of the unregistered securities sold to Plaintiff and a return of their capital investment(s), any and all lawful interest that the Plaintiff may be entitled to, attorneys' fees and costs and any other relief deemed just and proper by this Court.

## V. <u>FRAUD IN VIOLATION OF 10(B) AND RULE 10B-5(A) AND (C) OF THE SECURITIES EXCHANGE ACT OF 1934</u>

38.     Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP, restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the Complaint, as though fully set forth herein.

39.     Defendants BADNER and GHMI, since on or about April 5th, 2012 through present, directly or indirectly by use of the means and instrumentalities of interstate commerce, and of the mails in connections with purchase or sale of securities, knowingly, willingly or recklessly employed schemes or artifices to defraud or engaged in acts, practices, or courses of business which operate or could operate as a fraud or deceit upon any person.

40.     By reason of the foregoing, Defendants BADNER and GHMI have directly or indirectly violated §§ 10(b) of the Securities Act of 1934 and Exchange Act Rule 10B-5(a) and (c) [15 U.S.C. § 240.10b-5] and have damaged the Plaintiffs directly and proximately as a result of these violations.

WHEREFORE, Plaintiffs are entitled to recover and demand payment of any and all damages suffered as a result, to include rescission of the unregistered securities sold to Plaintiff and a return of their capital investment(s), any and all lawful interest that the Plaintiff may be entitled to, attorneys' fees and costs and any other relief deemed just and proper by this Court.

## VI. <u>FRAUD IN VIOLATION OF 17(A)(1) AND (3) OF THE SECURITIES</u>

## <u>EXCHANGE ACT</u>

41.   Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP,
      restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the
      Complaint, as though fully set forth herein.

42.   Defendants BADNER and GHMI, since on or about April 5th, 2012 through present,
      directly or indirectly by use of the means and instrumentalities of interstate commerce, and
      of the mails in connections with purchase or sale of securities, knowingly, willingly or
      recklessly employed schemes or artifices to defraud or engaged in acts, practices, or
      courses of business which operate or could operate as a fraud or deceit upon any person.

43.   By reason of the foregoing, Defendants BADNER and GHMI have directly or indirectly
      violated §§ 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (a)(3)] and
      have damaged the Plaintiffs directly and proximately as a result of these violations.

   WHEREFORE, Plaintiffs are entitled to recover and demand payment of any and all damages
   suffered as a result, to include rescission of the unregistered securities sold to Plaintiff and a
   return of their capital investment(s), any and all lawful interest that the Plaintiff may be entitled
   to, attorneys' fees and costs and any other relief deemed just and proper by this Court.

## VII. <u>FRAUD IN VIOLATION OF 17(A)(2) OF THE SECURITIES EXCHANGE ACT</u>

44.   Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP,
      restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the
      Complaint, as though fully set forth herein.

45.   Defendants BADNER and GHMI, since on or about April 5th, 2012 through present,
      directly or indirectly by use of the means and instrumentalities of interstate commerce, and
      of the mails in connection with purchase or sale of securities, knowingly, willingly or

recklessly employed schemes or artifices to defraud or engaged in acts, practices, or courses of business which operate or could operate as a fraud or deceit upon any person.

46.     By reason of the foregoing, Defendants BADNER and GHMI have directly or indirectly violated §§ 17(a)(2) of the Securities Act [15 U.S.C. § 77q(a)(2)] and have damaged the Plaintiffs directly and proximately as a result of these violations.

WHEREFORE, Plaintiffs are entitled to recover and demand payment of any and all damages suffered as a result, to include rescission of the unregistered securities sold to Plaintiff and a return of their capital investment(s), any and all lawful interest that the Plaintiff may be entitled to, attorneys' fees and costs and any other relief deemed just and proper by this Court.

## VIII. FLORIDA SECURITIES REGISTRATION VIOLATION-RESCISION

47.     Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP, restate and incorporate by reference the allegations set forth in paragraphs 1-31 of the Complaint, as though fully set forth herein.

48.     This is an Action against Defendants, DAVID BADNER ("BADNER") and GOLD HILL MINERALS, INC. ("GHMI"), seeking rescission pursuant to FLA. STAT. § 517.211(1) for failure to register the securities sold to the Plaintiffs.

49.     The securities sold to the Plaintiffs are securities under Florida law, and the transactions through which the sales occurred were not exempt transactions because of the failure to meet the requirements of FLA. STAT. § 517.061(11) with regard to such sales.

50.     The Defendants intended to sell the securities without registering them with the Florida Office of Financial Regulation, by claiming that the securities would be sold through exempt transactions, to include but not limited to knowingly and falsely claiming that the Plaintiffs were sophisticated investors.

51.     However, the Defendants failed to satisfy all statutory requirements for the sale of an exempt security under Florida law, thereby giving each of the Plaintiffs the right to demand

55.  Defendants are liable, jointly and severally, to Plaintiffs either directly or indirectly, for the acts alleged in this Complaint as:

    a.  BADNER was an employee, owner or agent of GHMI;

    b.  BADNER held himself as the President and Secretary of GHMI;

    c.  BADNER held himself out to have the legitimate authority to sell the securities purchased and close the transaction on behalf of GHMI;

    d.  BADNER is a shareholder of GHMI;

    e.  BADNER managed or operated the Investment Entity created for the investments;

    f.  BADNER participated in the sale of securities;

    g.  BADNER aided in making the sale of the securities; and

    h.  BADNER and/or GHMI were the seller of the securities.

56.  Pursuant to FLA. STAT. § 517.211(6), Plaintiffs have retained the undersigned counsel and are entitled to recover attorneys' fees for their successful prosecution of these claims.

WHEREFORE, the Plaintiffs demand judgment for rescission against Defendants, jointly and severally, including recovery of monies paid for purchases of securities, interest, costs, attorneys' fees and any other relief deemed just and proper by this Court.

## IX. FLORIDA SECURITIES FRAUD AGAINST DEFENDANTS SEEKING DAMAGES

57.  Plaintiffs, NAAMAN ABDULLAH, HZAK, LLC, and KEVMAR HOLDINGS, LP, restate and incorporate by reference the allegations set forth in paragraphs 1-31 and 36-46 of the Complaint, as though fully set forth herein.

58.  This is an Action for violations of FLA. STAT. § 517.301, pursuant to FLA. STAT. § 517.211(2).

59.  The shares in the GHMI entity constitute a security under Florida law.

60.  BADNER, as an Individual and as an officer, director, and alleged majority shareholder of GHMI, made false representations to the Plaintiffs or omitted key investment information,

including but not limited to that:

a. Plaintiffs' investment capital was not at risk;

b. Plaintiffs would receive dividends, initially by the end of August 2014;

c. Plaintiffs would receive dividends or be returned their money by the end of December 2014;

d. That the securities were properly registered or exempt from registration;

e. That BADNER and GHMI would provide each Plaintiff with detailed financial accountings for their investments;

f. That Plaintiffs would receive returns fifty to one hundred (50-100) times greater than their initial investments

g. That BADNER had experience operating mines and mining operations such as the ones the Plaintiffs were investing in.

h. The actual real operating history of GHMI was fraudulently exaggerated by BADNER.

i. The company was operating in a single activity and was not a diversified investment;

j. Potential increases in development and mining costs;

k. Adverse changes in the general economic conditions that would affect the investment;

l. Changes in applicable government regulations and mining laws;

m. the financial structure of GHMI, to include the reliance upon other investors to pay promised dividends or buy back shares (i.e. that it was basically a Ponzi Scheme);

n. The Plaintiffs' rights of rescission; and

o. The real liquidity in the Plaintiffs' investment and actual use of their funds.

61. The false representations and omissions were material to the Plaintiffs' decisions to invest and purchase securities.

62. BADNER knew or should have known, in the exercise of reasonable care, that the misrepresentations and omissions were false and materially misleading.

63.   BADNER knew or should have known, that he had a duty to disclose accurate and complete information.

64.   BADNER caused the omission of accurate complete information.

65.   BADNER intended that the Plaintiffs rely on the representations and omissions.

66.   Plaintiffs justifiably relied to their detriment and changed their economic positions based on the representations and /or omissions.

67.   Based on the foregoing allegations BADNER and GHMI, either directly or indirectly, employed a device scheme, and artifice to defraud the Plaintiffs in connection with the offer and sale of the shares, which are securities under Florida law, in violation of FLA. STAT. § 517.301(1)(a)1.

68.   BADNER and GHMI's actions violated STAT. § 517.301(1)(a)2 because they (BADNER as an agent for GHMI) used untrue statements of material fact and omitted material facts necessary in order to make the actual statements made seem misleading, in light of the trust from the Plaintiffs intentionally cultivated by BADNER.

69.   BADNER and GHMI's actions violated FLA. STAT. § 517.301(1)(a)3 because those actions resulted in Defendants engaging transactions, practices, or the course of business which operated as a fraud or deceit upon the Plaintiffs.

70.   Plaintiffs are entitled to recover the consideration paid for the securities plus interest thereon at the legal rate.

71.   Pursuant to FLA. STAT. § 517.211(6), Plaintiffs have retained the undersigned counsel and are entitled to recover attorneys' fees for their successful prosecution of these claims.

WHEREFORE, the Plaintiffs demand judgment for rescission against Defendants, jointly and severally, including recovery of monies paid for purchases of securities, interest, costs, attorneys' fees and any other relief deemed just and proper by this Court.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.


DATED: April 20th, 2015


                      **GARCIA-MENOCAL & PEREZ, P.L.**
                      *Attorneys for Plaintiffs*
                      730 NW 107th Avenue, Suite 214
                      Miami, FL 33172
                      Telephone: (305) 553-3464
                      Facsimile: (305) 553-3031
                      Primary E-Mail: ajperezlaw@gmail.com
                      Secondary E-Mail: agmlaw@bellsouth.net

                      BY: */s/ Anthony J. Perez*
                           ANTHONY J. PEREZ
                         Florida Bar No.: 535451
                         ALFREDO GARCIA-MENOCAL
                         Florida Bar No.: 533610

COMPOSITE EXHIBIT "A"



Thu, Jan 15, 7:33 PM

David , I am yet to receive any proposal ?

Hatem good evening I received all the purchase contracts this evening and if I don't get them out tonight you will see it tomorrow morning. Suffice it to

say the payout date to you does not change its still before the end of the month so the burden is on me not you. I just have to make sure all the share

2



●●●○○ Verizon  LTE    2:39 PM    VPN ✳ 35% ◼

**‹ Messages David Badner          Details**

say the payout date to you does not change its still before the end of the month so the burden is on me not you. I just have to make sure all the share

counts are correct. I will make sure yours goes out first. Thanks regards David

Thank you david for your prompt reply & working fast on this I know you have a lot on your plate.

It is my pleasure and I

4



●●●●● Verizon LTE   2:42 PM   VPN ⁂ 35% ▮

**‹ Messages David Badner   Details**

Hatem
I was on the phone with
Your fellow investors.
Will call you this morning
to follow up on our
agreement
Thanks
Davis

David

Tue, Feb 17, 7:19 PM

Hatem
Sorry I have been talking
to your other
shareholders I hope your
funds hit tomorrow. I am
waiting for verification so
I can forward to you

6



**Tue, Feb 24,** 6:43 AM

Hatem
Will call you later when I
get to airport to fill you in
Very good news
David

Great thank you.

**Tue, Feb 24,** 7:08 PM

Hatem
I return tomorrow do you
want to meet Thursday?
Thanks David

Yes that works

**Wed, Feb 25,** 1:36 PM



Wed, Feb 25, 9:14 PM

I am back I contacted
Kevin and Naaman
I need to deposit the
checks in the morning
but want to do
everything at once. Let's
work out a schedule
convenient to everyone
Have a good night
Thanks
David

**Text Message**
Sat, Feb 28, 9:54 AM

David what's going.
On ???????????

I deposited the $ waiting



other matters
Ok?

**Sun, Mar 1,** 7:44 AM

Ok so tomorrow Monday
we do the transaction.

**Mon, Mar 16,** 9:31 PM

Hatem finally spoke with
Naaman there is a call to
lawyers tomorrow at
3pm I guess the contract
was way to complicated
I will send you the call in
number

s If you are available.
Let's figure out a way to
make everyone happy

**Ketty Turino**

| | |
|---|---|
| **From:** | AGM <agmlaw@bellsouth.net> |
| **Sent:** | Friday, April 03, 2015 2:12 PM |
| **To:** | <ajperezlaw@gmail.com>; Ketty Turino |
| **Subject:** | Fwd: Gold hills |

Sent from my iPhone

Begin forwarded message:

> **From:** "Hatem Zayed, M.D." <hatemz1@gmail.com>
> **Date:** April 3, 2015 at 1:03:08 PM EDT
> **To:** Alfred Menocal Esq <agmlaw@bellsouth.net>
> **Subject: Fwd: Gold hills**

> Hatem zayed, M.D.

> Sent from my iPhone

> Begin forwarded message:

>> **From:** David Badner <davidbadner@aol.com>
>> **Date:** February 5, 2015 at 8:14:54 PM EST
>> **To:** "Hatem Zayed, M.D." <hatemz1@gmail.com>
>> **Subject: Re: Gold hills**

>> Hatem
>> I am back in Miami tomorrow and I hope I will resolve this to your satisfaction
>> David

>> David Badner.
>> Sent from my iPhone

>>> On Feb 5, 2015, at 7:18 PM, Hatem Zayed, M.D.
>>> <hatemz1@gmail.com> wrote:

>>> David

>>> I'm extremely disappointed, the fact that I haven't been paid yet is
>>> beyond me, I need to let you know that besides me, joseph boolbol
>>> will be able to act on my behalf &

1

COMPOSITE EXHIBIT "B"

TOTAL AUTHORIZED ISSUE
100,000,000 SHARES PAR VALUE $ .001 EACH
COMMON STOCK

See Reverse for
Certain Definitions

This is to Certify that _____

Kevmar Holdings LP

_____ is the owner of

Fourteen Thousand Seven Hundred Ninety-Three (14,793) _____ fully paid and

non-assessable shares of the above Corporation transferable only on the books of the
Corporation by the holder hereof in person or by duly authorized Attorney upon
surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated November 1, 2013

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.

**TOTAL AUTHORIZED ISSUE**
100,000,000 SHARES PAR VALUE $ .001 EACH
COMMON STOCK

This is to Certify that

Keymar Holdings ————————— is the owner of

Four Thousand Six Hundred Thirty Eight (4,638) ———— *fully paid and non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.*

*In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the seal of the Corporation.*

Dated April 5, 2012

© 1999 CORPEX BANKNOTE CO., BAY SHORE N.Y.



Gold Hill Minerals, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA

TOTAL AUTHORIZED ISSUE
100,000,000 SHARES PAR VALUE $.001 EACH
COMMON STOCK

This is to Certify that

Hzak LLC

is the owner of

Four Thousand Six Hundred Thirty Eight (4,638)

fully paid and non-assessable shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated April 5, 2012

SECRETARY

PRESIDENT



**Gold Hill Mineral, Inc.**

TOTAL AUTHORIZED ISSUE
100,000,000 SHARES PAR VALUE $ .001 EACH
COMMON STOCK

10

**This is to Certify that**

_____ Nasman Abdullah _____ is the owner of

___ Nine Thousand Two Hundred Seventy Six (9,276) ___ *fully paid and*
*non-assessable shares of the above Corporation transferable only on the books of the*
*Corporation by the holder hereof in person or by duly authorized Attorney upon*
*surrender of this Certificate properly endorsed.*

**Witness,** *the seal of the Corporation and the signatures of its duly authorized officers.*

**Dated** April 5, 2012

SECRETARY

PRESIDENT



Gold Hill Minerals, Inc.

INCORPORATED UNDER THE LAWS OF THE STATE OF NEVADA

22

TOTAL AUTHORIZED ISSUE
100,000,000 SHARES PAR VALUE .001 EACH
COMMON STOCK

This is to Certify that

Naaman Abdullah

is the owner of

Twenty Nine Thousand Five Hundred Eighty Six (29,586)

non-assessable shares of the above Corporation transferable only on the books of the
Corporation by the holder hereof in person or by duly authorized Attorney upon
surrender of this Certificate properly endorsed.

Witness, the seal of the Corporation and the signatures of its duly authorized officers.

Dated May 30, 2013

SECRETARY

PRESIDENT

© 1996 CORPEX BANKNOTE CO., BAY SHORE, N.Y.